**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMERICAN CIVIL LIBERTIES UNION
IMMIGRANTS' RIGHTS PROJECT,

                           Plaintiff,

          -against-

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION**
**AND ORDER**

19 Civ. 7058 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff American Civil Liberties Union Immigrants' Rights Project ("ACLU") brought this action under the Freedom of Information Act ("FOIA") against Defendant United States Immigration and Customs and Enforcement ("ICE") seeking disclosure of certain agency records regarding immigration apprehensions, detentions, removals, risk classification assessments, and bond management information. The parties have cross-moved for summary judgment. For the reasons that follow, the Court DENIES Plaintiff's motion and GRANTS the Defendant's motion by dismissing Plaintiff's claims for relief.

## I.    FACTUAL BACKGROUND[1]

### A.  The ACLU's FOIA Request

On October 3, 2018, the ACLU submitted a FOIA request to ICE, seeking five categories of "spreadsheet data along with any explanatory notes needed to make the data intelligible" on:

---

[1] In keeping with the standard practice in FOIA cases in this Circuit, the parties did not submit Rule 56.1 statements. *See New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012). Therefore, the facts laid out here are drawn from the parties' submissions, including affidavits and exhibits.

(1) removals or deportations, (2) detentions, (3) apprehensions, (4) ICE risk classification assessments, and (5) "data tracking transactions related to immigration bonds." (Decl. of David Hausman in Supp. of Pl.'s. Mot. for Summ. J., ("Hausman Decl."), ECF No. 35, ¶ 3, Ex. A.) The request specified that the ACLU wanted each row of data in the spreadsheet to correspond to an "individual or case." (*Id*. at Ex. A.) Importantly, the ACLU also requested "[i]n every case, alien numbers ("A-numbers") should be replaced with unique identifiers, and unique identifiers should also be provided for each unit of observation," thus allowing for single individuals to be tracked within and between the categories of data. (*Id.* at ¶¶ 4, 6.)

An alien number ("A-number") is a unique sequence of numbers assigned to noncitizens immigrating to the United States and functions as a personal identifier. (Decl. of Donna Vassilio-Diaz in Supp. of Def.'s Mot. for Summ. J., ("Vassilio-Diaz Decl."), ECF No. 32, ¶ 20.) A-numbers are personally identifying information, which are protected from disclosure by the FOIA.[2] (*Id.*) A-numbers are "[t]he only piece of information stored" in ICE's database that connect a category of data to a specific individual. (*Id.* at ¶¶ 12, 20.) Thus, substituting unique identifiers ("Unique IDs") for A-numbers would advance the goal of the request, which was to obtain information "about how ICE manages cases from the time of a noncitizen's arrest and detention and/or placement into removal proceedings through the final case disposition." (Hausman Decl. ¶ 4.)

**B. ICE's Search and Production**

ICE maintains two main databases, the Enforcement Integrated Database ("EID") and the ICE Integrated Decision Support System ("IIDS"). (Vassilio-Diaz Decl. ¶¶ 6, 9.) On October 24, 2018, the ICE FOIA Office forwarded the ACLU's request to the Enforcement Removal Operations department ("ERO"), the office responsible for spreadsheet data related to immigration

---

[2] The withholding of A-numbers is not at issue in this case. (Stipulation and Order, ECF No. 29, ¶ 2(d).)

enforcement.  (*Id.* at ¶ 15.)  An analyst in the Statistical Tracking Unit determined that all the information responsive to the ACLU's requests was located on the IIDS and searched this database to fulfill the request.  (*Id.* at ¶ 17.)  This is the same process ICE employed in response to similar FOIA requests from the New York Times and Human Rights Watch, after which the ACLU modeled its request.  (Vassilio-Diaz Decl. ¶ 17; Hausman Decl. ¶¶ 10, 11.)

As explained in more detail in the declaration of Ms. Vassilio-Diaz, the IIDS database houses information on detentions, apprehensions, risk classifications, and bond management in "distinct data sets" (i.e. separately). (Vassilio-Diaz Decl. ¶ 12.)  The IIDS "contains information that is adapted for efficient report generation" and is commonly used to prepare and publish population-based summary reports "for the public, ICE leadership, Congress, and the President." (*Id.* at ¶¶ 10, 11.)  ICE officers can retrieve data on specific individuals from the EID using a "separate software application," but the data can only be pulled "one at a time on an ad-hoc basis, and the ICE officer must have a specific personal identifier, such as an A-number."  (*Id.* at ¶ 12.) According to ICE, this software does not give ICE the ability to create reports that are person-centric (i.e. reports where each row of a category of data corresponds to a particular individual). (*Id.*)  Similarly, ICE officers can view an individual's complete immigration history by reviewing the noncitizens hardcopy file, also referred to as an "Alien File." [3]  (*Id.*)

ICE searched the IIDS database, and after multiple layers of review, produced spreadsheets for each category of information requested.  (*Id.* at ¶¶ 19, 22.)  In total, ICE produced 40 spreadsheet tabs constituting a little over one million rows of data covering the years 2012 to 2019. (*Id.*)  Notably, ICE did not provide Unique IDs in place of A-numbers (which, as noted above,

---

[3] The ACLU does not challenge these contentions by ICE's declarant.  Instead, the ACLU argues that ICE would face a "de minimus burden" in creating or obtaining a computer program which could extract Unique IDs "in the process of searching for the requested information."  (Pl.'s Mot. at 2; Hausman Decl. ¶¶ 27, 34.)

3

were redacted pursuant to personal privacy FOIA exemptions) as the ACLU had requested. ICE maintains that it does not have a computer program that would allow it to replace A-numbers in the IIDS with Unique IDs. (*Id.* at ¶ 21.)

## C. Procedural History

The ACLU commenced this action on July 19, 2019 and alleged that ICE had failed to timely search its records and produce responsive documents in violation of the FOIA and the Administrative Procedures Act, 5 U.S.C. § 706. (Compl., ECF No. 1.) The complaint sought to compel the disclosure of all requested records. (*Id.* at 9.) After ICE's production, the parties reached a partial settlement, agreeing to limit their arguments on summary judgment to ICE's obligation to disclose "Unique Identifiers in place of A-numbers, as requested by Plaintiff in the FOIA Request." (Stipulation and Order, ECF No. 29, ¶ 1.)

The sole issue to be decided by this Court is whether the FOIA requires ICE to replace A-numbers with Unique IDs.

## II. LEGAL STANDARD

### A. Summary Judgment and the Freedom of Information Act

"FOIA cases are generally and most appropriately resolved on motions for summary judgment." *Families for Freedom v. U.S. Customs & Border Prot.*, 797 F. Supp. 2d 375, 385 (S.D.N.Y. 2011). Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A district court considering a FOIA claim "may grant summary judgment in favor of an agency 'on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence

in the record or by evidence of agency bad faith.'" *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *Gallant* v. *NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)); *see also Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy*, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002) ("If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply."). Thus, "if the agency's submissions are adequate on their face . . . the district court may forgo discovery and award summary judgment on the basis of affidavits." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (internal quotations omitted). On the other hand, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Nat. Res. Def. Council, Inc.* v. *U.S. Dep't of Interior*, 36 F.Supp.3d 384, 398 (S.D.N.Y. 2014) (quoting *N.Y. Times Co.* v. *U.S. Dep't of Def.*, 499 F.Supp.2d 501, 509 (S.D.N.Y. 2007)).

## III. THE ACLU'S REQUEST REQUIRES THE CREATION OF A NEW RECORD

### A. Relevant Statutory Background

The "'FOIA was enacted to promote honest and open government' and 'to ensure public access to information created by the government in order to hold the governors accountable to the governed.'" *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (internal citations omitted). To meet these goals, the FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

Thirty years after the FOIA was first enacted, Congress passed the Electronic Freedom of Information Act Amendments of 1996 ("E-FOIA Amendments") as many agencies began shifting

5

from keeping records in paper format to storing them electronically. Principally, the E-FOIA Amendments, "altered FOIA's definition of 'search' and agency 'record' to specifically address automatic review of electronic files." *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 403 F. Supp. 3d 343, 348 (S.D.N.Y. 2019), *rev'd and remanded*, 984 F.3d 30 (2d Cir. 2020). The E-FOIA Amendments also added the provision that, "[i]n responding ... to a request for records, an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C). Congress defined "record" to include electronically stored information. *Id.* § 552(f)(2)(A). Additionally, agencies must provide the record "in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." *Id.* § 552(a)(3)(B).

The parties' motions also raise the FOIA Improvement Act of 2016, which was signed into law by President Obama and amended FOIA in numerous ways. *See* Pub. L. No. 114-185, 130 Stat. 538. As relevant here, the FOIA Improvement Act added a provision concerning segregability, which requires agencies to "(I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible . . . and (II) take reasonable steps necessary to segregate and release nonexempt information."[4] 5 U.S.C. § 552(a)(8)(A)(ii).

---

[4] As the parties note, the only court to analyze this new provision acknowledged that "the FOIA Improvement Act of 2016 added another provision that concerns segregability," but concluded that for information in a document the requirements of sections 552 (b) and 552 (a)(8)(A)(ii) are coextensive. *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 2019 WL 7372663, at *15 (D.D.C. Dec. 31, 2019) ("[S]ubsection (b) of FOIA [is] satisfied by affidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions. . . . The FOIA Improvement Act appears to require no more than that . . . .'")

Here, the ACLU argues that ICE is required to "replace A-numbers with Unique IDs" because ICE can segregate out Unique IDs (nonexempt information) from A-numbers (exempt information) using nonburdensome computer software. (Pl.'s. Cross Mot. for Summ. J. and Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 33, at 10-11.) This process, according to the ACLU, is required, in part, because Congress expanded the scope of the FOIA's segregability mandate when it passed the FOIA Improvement Act of 2016. (*Id.*) ICE argues that it is not obligated to provide Unique ID's, as the ACLU requests, because doing so would require the creation of new records, and additional research and analysis, which goes beyond the obligations imposed by FOIA. (Def.'s Mot. for Summ. J., ("Def.'s Mot."), ECF No. 30, at 11–18.)

## B. The Replacement of Alien Numbers with Unique IDs Creates a New Record

### 1. Record Creation

ICE avers that its IIDS database does not contain the type of person-centric Unique IDs requested by the ACLU. (Def.'s Mem. in Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Opp'n"), ECF No. 39, at 1; Vassilio-Diaz Decl. ¶ 20.) It maintains that "the only piece of information stored in a row of IIDS data that connects an entry to an individual uniquely is that individual's A-number." (Vassilio-Diaz Decl. ¶ 20.) According to ICE's declarant, because ICE does not maintain a computer program capable of replacing A-numbers with Unique IDs, it would have to: "(1) create a program capable of uniquely substituting a new number for a pre-existing number; (2) input each A-number from each dataset within the IIDS (millions of entries in total) into the program; (3) run the program to create new unique identifiers; (4) replace all A-numbers within the IIDS datasets with the new unique identifiers; and (5) maintain and store the new computer program and new unique identifiers, for which ICE has no operational use." (*Id.* at ¶ 20.)

The ACLU concedes that the "full disclosure of A-numbers is not possible" and does not claim that Unique IDs are directly stored in the IIDS database. (Pl.s' Mot. at 12.) Instead, the ACLU asserts that one of the functions of A-numbers is to convey "Relational Information," that is information which shows that the records are associated with particular individuals. (*Id.*) The ACLU argues that the FOIA requires ICE to segregate out this "nonexempt Relational Information" by running Structured Query Language searches or the five-step process described by ICE, either of which, it maintains, is not a burdensome process for ICE to perform. (*Id.* at 12–14.) The ACLU further argues that ICE is obligated by the FOIA to reformat A-numbers as Unique IDs because that format is "readily producible." (*Id.* at 14–16.) According to the ALCU, all of the information conveyed by A-numbers is an existing record within ICE's database and thus its requests only ask for the disclosure of an existing record.

The FOIA does not require agencies to generate new records in response to FOIA requests. *Forsham v. Harris*, 445 U.S. 169, 186 (1980); *see also Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request."). Agencies are "only obligate[d] . . . to provide access to those [documents] which it in fact has created and retained." *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 152 (1980). While the FOIA requires agencies to conduct a reasonable search, they need not "dig out all the information that might exist, in whatever form or place it might be found, and . . . *create* a document that answers plaintiff's question." *Frank v. U.S. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996). Thus, the dispute here is whether the ACLU's request for the substitution of Unique IDs requires ICE to create new records or conduct research and analysis beyond the contents of the IIDS database.

8

When an agency stores information in an electronic database, "searching that database . . . [or] sorting [it] to make information intelligible does not involve the creation of a new record." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012). "Sorting a database by a particular data field (*e.g.,* date, category, title) is essentially 'the application of codes or some form of programming," and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests." H.R. Rep. 104–795, at 22, 1996 U.S.C.C.A.N. 3448, 3465. But this alone does not resolve the issue of determining when "the manipulation of data points in an electronic database through 'the application of codes or some form of programming' crosses the all-important line between searching a database, on the one hand, and either creating a record or conducting research in a database on the other." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270–271.

In *National Security Counselors v. C.I.A.*, the plaintiff challenged the CIA's refusal to produce certain records in response to a FOIA request. Among plaintiff's requests were "(1) a request for 'database listings of all FOIA requesters from Fiscal Years 2008-2010 according to the fee categories to which CIA assigned them,' and (2) a request for 'a record that would indicate the ten individuals responsible for the most FOIA requests submitted (each) in Fiscal Years 2008, 2009, and 2010.'" *Id.* at 268–69. The CIA refused to produce these records arguing that its "record systems are not configured in a way that would allow [it] to perform a search reasonably calculated to lead to the responsive record without an unreasonable effort.'" *Id.* at 245. The CIA further argued that "processing requests for database listings would (a) require it to create new records, as opposed to merely producing preexisting records and/or (b) require it to conduct research, as opposed to merely performing a search." *Id.* at 269. The court held that "although

the act of searching and sorting" the database was not the creation of a new record the production of "a listing of database search results involve[d] the creation of a record." *Id.* at 271.   The court reasoned that "[p]roducing a listing or index of records . . . is different than producing particular points of data (*i.e.,* the records themselves)" because "the listing or index of the contents of a database would not necessarily have existed prior to a given FOIA request." So too here.

The ACLU requests "nonexempt Relational Information" or information conveyed by the existence of A-numbers.   But ICE does not maintain "Relational Information" or "unique identifiers" in the IIDS database. (Def.'s Mot. at 18; Vassilio-Diaz Decl. ¶ 20.) These extrapolated data points are simply not something that ICE "has in fact chosen to create and retain."[5] *Yeager,* 678 F.2d at 321.   "Relational Information" and "Unique IDs" are not preexisting data fields (e.g. date, category, or title) in the IIDS database which ICE can sort.   The ACLU's request for "Unique IDs" or "Relational Information" does not seek the contents of the IIDS database (such as A-numbers), but instead seemingly seeks information about those contents.   As such it is a request that requires the creation of a new record.   *See People for the American Way Foundation v. U.S. Dep't of Justice,* 451 F.Supp.2d 6, 15 (D.D.C. July 18, 2006) (producing a "list of records returned from [a database] search" is "something that FOIA does not mandate" because "the list was not previously created or obtained by the agency" and "an order that defendant produce such a list would be tantamount to requiring the defendant to *create* an agency record");

---

[5] Plaintiff asserts that creating computer programming necessary to conduct a search does not constitute record creation. *See Schladetsch v. U.S. Dept of H.U.D.*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000). But that is not the issue in this case. In *Schladetsch,* the Department of Housing and Urban Development "conceded that it possesse[d] in its databases the discrete pieces of information" which the plaintiff sought. *Id.* While ICE does not "maintain a computer program" which could replace A-numbers with Unique IDs, the more salient issue is that ICE's IIDS database does not contain the Unique IDs sought by the ACLU. (Vassilio-Diaz Decl. ¶¶ 20, 21.)

*see also Elkins v. Fed. Aviation Admin.*, 103 F. Supp. 3d 122, 131 (D.D.C. 2015) (holding that application of a "confidential algorithm . . . in order to translate identifying information" into a nonexempt format was record creation.)

The ACLU relies heavily on *Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, and argues that after this decision "a request for database information creates a new record only when 'generating the information requires the agency to engage in additional research or conduct additional analyses above and beyond the contents of its database.'" (Reply Mem. in Further Supp. of Pl.'s Cross Mot. for Summ. J ("Pl.'s Reply"), ECF No. 41, at 7, (citing 403 F. Supp. 3d at 359.)) The ACLU further contends that if the requested information is "apparent on the face of a database when searches required by FOIA are conducted" then disclosing that information does not create a new record. *Id.*

But *Everytown* also makes clear that "whether an agency is obligated to respond [to a request for database information] in a given case will depend upon the design and structure of its database." 403 F. Supp. 3d at 357. Here, Unique IDs are not "apparent on the face of the database" because ICE has made clear that the database does not contain Unique IDs. (Vassilio-Diaz Decl. ¶¶ 20.) As noted in the Vassilio-Diaz declaration, after creating or obtaining a computer program to conduct the search, the program would need to create the Unique IDs and replace all the A-numbers with the new Unique IDs. (*Id.* at ¶ 21.) The ACLU asserts that "Relational Information is apparent from the A-numbers appearing on the unredacted spreadsheets compiled by ICE after searching its databases." (Pl.'s Reply at 7.) However, "Relational Information" or Unique IDs cannot be "apparent on the face of the database" because they are conceptual abstractions, not datapoints within the IIDS. Further, the "IIDS was not designed as a well-formed and normalized database where every record is attached to one person through the assignment of a Unique [ID]."

11

(Vassilio-Diaz Supp. Decl ¶ 8.) Thus, the design and structure of the IIDS database does not oblige ICE to create Unique IDs.

### 2. Segregability

In support of their segregability argument, the ALCU cites (and highlighted at oral argument) *Trans-Pacific Policing Agreement v. U.S. Customs Service,* 177 F.3d 1022 (D.C. Cir. 1999). (P's Mot. at 10,12; *see also* Tr. of Oral Arg, dated Dec. 3, 2020 ("Oral Argument Tr."), ECF No. 47, at 46:9– 47:19.) In *Trans-Pacific Policing Agreement*, an association of ocean common carries requested shipping code numbers from the United States Customs Service. 177 F.3d at 1023. Customs refused to provide certain codes and claimed that they were exempted from the FOIA. *Id.* The codes at issue were ten-digits long and each digit "add[ed] an additional layer of specificity to the description of the good." *Id.* 1024. The district court held that the full unredacted code was properly withheld. *Id.* at 1026. The D.C. Circuit held that the district court had erred when it did not "consider segregability sua sponte" and remanded the case for the purpose of determining whether disclosure of redacted shipping codes was possible. *Id.* 1029– 1030.

*Trans-Pacific* only highlights a weakness in the ACLU's argument; the ACLU presumes the existence of segregable information (Unique IDs) in ICE's database. In *Trans-Pacific*, the shipping codes (which the district court was to consider redacting on remand) had already been created by Customs prior to the FOIA request. Here, ICE would have to first create the Unique IDs and then substitute them for A-numbers. The ACLU's theory that A-numbers convey "Relational Information" which may be segregated out by the application of code is unavailing. Every datapoint in an agency database conveys a variety of information but an agency is not obligated to produce "information in the abstract." *Forsham*, 445 U.S. at 185–186. Extending the

FOIA to obligate agencies to segregate and produce not just data points but the meaning of every data point is beyond the power of this Court. *See, e.g., ACLU v. DOJ*, 681 F.3d 61, 71 (2d Cir. 2012) ("FOIA does not permit courts to compel an agency to produce anything other than responsive, non-exempt records.)  Simply put, ICE cannot be compelled to segregate what does not already exist.[6]

### 3.  Form and Format

The ACLU's argument "that ICE is obligated to honor Plaintiff's request for A-numbers formatted as Unique IDs because that format is readily reproducible" similarly fails.  (Pl.'s Mot. at 14.)  FOIA mandates that agencies disclose records in "any form or format requested . . . if the record is readily reproducible by the agency in that form or format.  5 U.S.C. § 552(a)(3)(B).  The ACLU contends that because ICE admits to having A-numbers in its databases, and because it has the capability of transforming A-numbers into Unique IDs, it must produce A-numbers in the format of Unique IDs.

FOIA does not define the words "form" or "format," so the Court must consider the ordinary meanings of these words.  *See BP America Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) ("Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.")  The United States District Court for the District of Columbia recently analyzed the ordinary meanings of "form or format" as used in 5 U.S.C. § 552(a)(3)(B).  *See*

---

[6] The ACLU asserts that ICE should be required to provide Unique IDs because the steps (laid out by their declarants) for ICE to create Unique IDs is "essentially the same as those for a search" and "impose no significant burden" on ICE. (Pls Br. Pg. 12.) Having determined that the production of Unique IDs constitutes record creation, this Court need not decide whether applying software to transform A-numbers to Unique IDs is burdensome. *See, e.g. Aguiar v. Drug Enf't Admin.*, 334 F. Supp. 3d 130, 144 (D.D.C. 2018) (declining to consider arguments regarding reproducibility after finding that the request would require the creation of new records.)

*generally, Sai v. Transportation Sec. Admin.*, 466 F. Supp. 3d 35, 41 (D.D.C. 2020). In *Sai*, the court "constru[ed] 'form' to refer to the media—*e.g.*, paper or thumb drive—and constru[ed] 'format' to refer to the electronic 'structure for the processing, storage, or display of data . . . e.g. a PDF or JPEG.'" This Court finds no reason to depart from this analysis. Applying these definitions here, ICE is correct, the ACLU's request does not implicate format (i.e. file type). Instead, the ACLU seeks to have ICE transform A-numbers into Unique IDs. Such a request is not the purpose of this section of the FOIA. *Id.* ("Congress intended to increase access to electronic records in all types of media (*e.g.*, tapes, microfiche, thumb drives) and in all types of formats (*e.g.*, PDF, JPEG).")

**4. ICE's Prior Practice**

Finally, the ACLU contends that because ICE had previously provided Unique IDs in response to FOIA requests from the New York Times, Human Rights Watch, and the Transactional Records Access Clearinghouse it is obligated to do so here. (Pl.'s Mot. at 22; Hausman Decl. ¶¶ 10–12.) This is incorrect for two reasons. First, the identifiers provided in those cases differed from the Unique IDs requested here. (Supplemental Decl. of Donna Vassilio-Diaz ("Vassilio-Diaz Supp. Decl."), ECF No. 40, ¶ 14.) The earlier requests did not seek to track individuals across multiple categories of data. (*Id.*) Second, ICE provided those unique identifiers as an "exercise of discretion." *Am. Immigration Council v. U.S. Immigration & Custom Enf't*, 2020 WL 2748515, at *8 (D.D.C. May 27, 2020). This exercise of discretion does not change ICE's obligations under the FOIA. *See Am. Civil Liberties Union v. Dep't of Def.*, 752 F. Supp. 2d 361, 372 (S.D.N.Y. 2010) ("Numerous courts have found, under similar circumstances, that the Government's discretionary decision to release a limited set of information does not waive FOIA protection for similar information that is not discretionarily released.")

## IV.   CONCLUSION

Defendant's motion for summary judgment dismissing Plaintiff's claims, (ECF No. 30), is

GRANTED. Plaintiff's cross-motion, (ECF No. 33), is DENIED.  The Clerk of Court is directed

to close the motions accordingly.


Dated: New York, New York
       March 10, 2021

                                          SO ORDERED.

                                          _George B Daniels_
                                          GEORGE B. DANIELS
                                          United States District Judge

15